IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CA No.: 5:23-cv-00060

| | | |
|---|---|---|
| SABRINA STILES, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiffs,* | ) ) ) | **COLLECTIVE/CLASS ACTION COMPLAINT** |
| v. | ) ) | |
| CITRIX SYSTEMS INC., | ) ) | |
| *Defendant.* | ) | |

COMES NOW, Sabrina Stiles ("Named Plaintiff" or "Stiles"), on behalf of herself and all others similarly situated (collectively "Plaintiffs"), by and through undersigned counsel, and hereby sets forth this collective and class action for violations of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, against Defendant Citrix Systems Inc. ("Defendant"), and alleges as follows:

## PRELIMINARY STATEMENT

1.     This action arises out of Defendant's systemic, company-wide failure to compensate Plaintiffs for all hours worked and for overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and for failing to comply with promises to compensate Plaintiffs for all hours worked and hourly rates in violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*, and in violation of statutory recordkeeping provisions.

2.     Plaintiffs consist of current and former employees who work as Sales Representatives or Territory Managers.  Moreover, while Defendant uses various titles for employees engaged in sales, the all-encompassing term for named Plaintiff and those similarly

situated is "Sales Representative."

3.     Despite notifying Plaintiffs of their non-exempt hourly status, overtime eligibility, hourly rates, promised bonuses, and shift differentials through an employee handbook and earning statements consistent with the NCWHA, Plaintiff and others similarly situated were not paid for all hours worked as promised, (including time spent working through lunch breaks), promised hourly rates (exceeding the minimum wage rate of $7.25/per hour for hours less than forty (40) per week), promised bonuses, and they did not receive promised overtime premium rates at time and one-half for hours worked over 40 per week in violation of the NCWHA.  Moreover, the FLSA's Savings Clause pursuant to § 218(a) of the FLSA provides that employers should comply with the more stringent between the FLSA and state wage and hour laws.  Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does *not* preempt the NCWHA.

4.     Additionally, Plaintiffs did not receive the appropriate premium overtime rate(s) because Defendant Citrix did not incorporate all bonus earnings and/or shift differentials, in determining the appropriate regular rate for overtime compensation when Plaintiff worked in excess of forty (40) hours per week, in violation of the FLSA, as applicable.

5.     Throughout the relevant period, Defendant, a soft-ware development company, has maintained a corporate policy of misclassifying Plaintiffs as overtime exempt employees despite specific written policies pursuant to Defendant's handbook to compensate for all hours worked and failing to compensate Plaintiffs for all mandatory pre-shift, post-shift work, and time spent working during lunch breaks.  In particular, Defendant required Plaintiffs to report only scheduled shift times on timesheets and automatically deducting one hour for a "lunch break."  Plaintiffs were forbidden from documenting (1) any time spent performing pre-shift tasks, such as turning on computers, logging into programs, and preparing their workstation for each shift; (2) time spent

2

working during "lunch breaks," including, but not limited to, speaking with clients and going through demonstrations with prospective buyers; and (3) time spent working after scheduled shifts times, including, but not limited to, phone calls that occurred at various hours in the evening with prospective customers located in various time zones.

6.     Defendant, through its managers and human resources representatives, was aware that Plaintiffs were completing the pre- and post-shift work and doing so without compensation. Defendant suffered or permitted, and in fact required Plaintiffs to complete such work without compensating Plaintiffs for the same.

7.     Pursuant to Defendant's policy, Plaintiffs routinely only documented 40 hours of work per week, without accounting for work performed before and after each shift as well as during lunch.  When such work is included, even those Plaintiffs who were scheduled and paid for only 40 hours per week, actually worked over 40 hours per week without being compensated for all hours worked or compensated at the overtime rate for hours worked over 40 per week.

8.     Throughout the relevant period, Defendant also maintained a corporate policy of underpaying and failing to lawfully compensate Plaintiffs at the appropriate overtime rates. Defendant issued monthly "commissions" to Plaintiffs, based on objective, nondiscretionary metrics, including a fixed formula based on the percentage of sales reached relative to the set sales goals each month.  Defendant, however, failed to take into account such commissions during overtime workweeks when calculating Plaintiffs' regular and overtime rates.

9.     Defendant's practices of failing to compensate Plaintiffs for all hours worked and failing to compensate Plaintiffs at the appropriate promised overtime rate(s) for overtime hours worked, violated Plaintiffs' rights under the FLSA's statutory minimum requirements and NCWHA.

10.     Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class in North Carolina:

> All individuals who were, are, or will be employed by Defendant or performed work for Defendant in North Carolina at any time within the past three (3) years preceding September 2020, through the date of judgment or final disposition in this action, and who were subject to Defendant's timekeeping policy of only documenting scheduled shift time(s); subject to Defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks or who worked forty (40) or more hours in at least one workweek in which undocumented work was performed, and/or who were paid commissions and worked overtime during any pay period for which a commission was received.

11.     Defendant is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

12.     Plaintiffs who elect to participate in this FLSA collective action seek compensation for all unpaid pre- and post-shift work performed for Defendant, including during lunch breaks, even though such lunch breaks were automatically deducted from the individuals' daily hours worked, at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, post judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

13.     Plaintiff also brings this action, on her own behalf, and as a representative of similarly situated individuals who performed work for or are employed by Defendant in North Carolina under the NCWHA.

14.     Plaintiff, who was  a North Carolina resident and who worked for Defendant in North Carolina, asserts she and the putative class, who work or worked for Defendant in North Carolina, are entitled to compensation for all work performed for Defendant, whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate regular and

4

overtime rate for all hours worked less than (40), in addition to, hours in excess of forty (40) per week respectively, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d). These promises are not enforceable under the FLSA, and thus the NCWHA is more stringent and provides greater protections to North Carolinians than the FLSA.

15.     Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's employees in North Carolina:

> All individuals who were, are, or will be employed by Defendant or performed work for Defendant in North Carolina at any time within the past two (2) years prior to September 2020, through the date of judgment or final disposition in this action, and who were subject to Defendant's timekeeping policy of only documenting scheduled shift times; subject to Defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks and/or who were paid commissions and worked overtime during any pay period for which a commission was received.

## PARTIES

16.     Plaintiff Stiles is an adult resident of Colorado.  She worked as an inside sales representative, and in similar positions, for Defendant at its Raleigh, North Carolina location from approximately May 4, 2018, to November 2019.  Plaintiff spoke to clients on behalf of Defendant around the globe, United States, and throughout North Carolina.  All work was conducted telephonically or via video conference.  Her scheduled shift was typically 8:30 a.m. through 5:00 p.m., Monday through Friday.

17.     Defendant is an American, publicly traded multinational software-developing company, organized under Delaware law, headquartered in Florida, and has its principal place of business located in Fort Lauderdale, Florida.

18.     According to its website, Defendant operates sixty (60) offices in forty (40)

countries, with over 400,000 organizations utilizing Defendant's self-developed and patented cloud-based software, desktop and application virtualization, and data sharing technologies.

19.    Upon information and belief, Defendant reported a total revenue of $3.2 billion at the 2020 Annual Meeting of Shareholders.

20.    Upon information and belief, during the time period relevant to this action, Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Named and Putative Plaintiffs, pursuant to the FLSA and NCWHA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Named and Putative Plaintiffs, and Defendant received the benefit of Named and Putative Plaintiffs' labor.

## JURISDICTION AND VENUE

21.    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

22.    The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant conducts business in all areas of the state, including, but not limited to, Wake County, North Carolina, which is located within this District.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), insomuch as Defendant conducts business within the Eastern District of North Carolina, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

24.    Additionally, the claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the NCWHA because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

25.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

6

26. The evidence establishing liability for the causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

**COVERAGE**

27. At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

28. At all relevant times, Defendant operated as an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

29. At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

30. At all relevant times, Defendant has had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

31. At all times material to this action, Defendant was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

**FACTUAL ALLEGATIONS**

32. Defendant employs over 8,100 employees worldwide, with several hundred inside sale representatives working at Defendant's Raleigh, North Carolina location.

33. According to its website, Defendant markets and licenses its products both directly and indirectly through value-added resellers, independent software vendors, value-added distributors, and original equipment manufacturers.

34. Upon information and belief, at all times material to this complaint, Defendant's

7

uniform approach throughout its operations in securing, assigning, monitoring, and compensating Plaintiffs was intentionally done to evade their obligations under the FLSA and NCWHA.

35.     Defendant employs individuals in various positions, including, but not limited to, inside sales representatives, software engineers, and marketing positions.

36.     Regardless of Defendant's policies and promises regarding compensation through Plaintiff's earning statements and company handbook, Defendant misclassifies hourly, nonexempt employees as salaried-exempt.

37.     Defendant did not compensate Plaintiffs for all hours worked, including hours over forty (40) that were worked in a given workweek and did not a pay a premium rate of time- and one-half for such time worked.

**A. Wage-Related Allegations – Unpaid Hours Worked**

38.     Defendant schedules Plaintiffs to work eight (8) hour shifts, five (5) days per week, with a one (1) hour unpaid lunch break each day.  However, in order to meet Defendant's expectations, Plaintiffs are required to work between 50 and 55, if not more, hours per week.

39.     For example, Plaintiff worked for Defendant as an inside sales representative, or in similar positions, during the relevant time period. As a sales representative, Plaintiff served customers throughout North Carolina, the United States, and across the globe.

40.     Sales representatives communicate with current and prospective customers telephonically or via video conference regarding products developed and offered by Defendant, including performing sales demonstrations to clients and prospective customers, wherein the representative walks the customer through the various features of Defendant's product and software. Sales representatives may be assigned to a partners group, gross sales group, inbound group, or territory-based team.  Regardless of the assigned "team," all sales representatives are

subject to the same schedule and performance-based expectations of Defendant.

41.     Currently, sales representatives are compensated on an hourly basis.  In addition to hourly wages, sales representatives receive a monthly, nondiscretionary commission based on the percentage of sales obtained relative to Defendant's set quota.  For example, if a sales representative completes enough sales to reach 100% of the quota, the representative will receive 100% of the commission amount.  If the sales representative exceeds the goal by 110%, the sales representative receives 110% of the commission amount.  Commissions are paid at the end of each month, based on the sales quota achieved that month.

42.     Sales representatives are typically scheduled to work from 8:30 a.m. to 5:30 p.m., with a one-hour, unpaid lunch break.  In order to meet sales goals and satisfactorily assist clients in various time zones, sales representatives are required to arrive to work prior to the start of their schedule shift, work through their unpaid "lunch break," and continue assisting and corresponding with clients after the end of their shift.

43.     Specifically, prior to the start of each shift, as a sales representative, Plaintiff typically arrived ten (10) to fifteen (15) minutes early in order to begin logging onto various programs, including Workday and Coffee, read emails, and other tasks required to become work ready.

44.     Defendant's policies and practices essentially required sales representatives to arrive to work prior to the start of the shift, in order to be work-ready and present for team meetings that begin promptly at 8:00 a.m.  In other words, if Plaintiff arrived in the building at 8:00 am, Plaintiff would be late.  While Plaintiff's shift ended at 5:30 pm, Plaintiff normally worked until 6:00 or 6:30 pm, and Plaintiff skipped lunch.

45.     Additionally, Sales Representatives are expected to continue working through their

lunch breaks, as needed, in order to continue assisting a client or otherwise walking a prospective customer through a demonstration of Defendant's products. Approximately three (3) days per week, Plaintiff was required to continue working through her "lunch break." During this time, Plaintiff worked an average of approximately 52 hours per week.

46.     At the end of each shift, sales representatives are rarely able to finish phone calls with clients, shut down their workstation, and leave at the scheduled end of the shift. During the relevant time period, sales representatives typically performed post-shift tasks, including but not limited to, manually shutting down computers, completing outstanding paperwork, sending emails, and speaking to and following up with clients and prospective customers.

47.     Given the work demands depended in large part on the needs of the clients, their respective locations, and the volume of prospective customers, sales representatives could continue working for as much as an additional three (3) hours past their scheduled shift time.

48.     Additionally, because Defendant maintains clients across the globe, including in countries such as Australia, China, and India, sales representatives are also responsible for corresponding with customers in various time zones. In order to facilitate phone calls at a time convenient for foreign clients, Defendant requires sales representatives to conduct evening phone calls, either from the office or at home.

49.     Approximately one (1) to two (2) times per week, Plaintiff was required to take calls around 8:30 or 9:00 p.m. with foreign clients. Each foreign call typically lasted one (1) hour.

50.     In order to meet Defendant's sales quotas each month, sales representatives were required to work more than the scheduled forty (40) hour workweeks.

51.     During the first two weeks of each month, Plaintiff typically worked approximately two (2) hours per day more than her scheduled shift, approximately three days each week. During

these first weeks of the month, including time spent performing pre-shift work, working through her lunch break, and performing post-shift work, Plaintiff typically worked an average of approximately fifty-two (52) hours per week.

52.    During the last two weeks of each month, when the deadline to meet the sales quota was impending, Plaintiff typically worked three (3) hours per day more than her scheduled shift, approximately three (3) days each week.  During these last two weeks of the month, including time spent performing pre-shift work, working through her lunch break, and performing post-shift work, Plaintiff typically worked at least approximately fifty-five (55) hours per week.

53.    Defendant, Plaintiff's managers, and the Human Resources Department were aware of the work being performed outside of the scheduled shift times.

54.    When Plaintiff began her employment with Defendant in May 2018, she was paid on a salary basis, $33,750 per year, plus commissions. At the time, Defendant classified Plaintiff as overtime exempt.

55.    Accordingly, Defendant did not require Plaintiff to track any of her hours worked or compensate Plaintiff for the additional hours worked beyond the scheduled forty (40) hours.

56.    In January 2019, Defendant's human resources manager as well as other department managers held a one-hour meeting with all inside sales representatives in the "stadium" of the Raleigh, North Carolina location.  In fact, in January 2019, when Citrix converted sales representatives from salary to hourly, Plaintiff's direct supervisor, Josh Donahue, and senior manager, Patrick Ingram, spoke with Plaintiffs about this change.  Plaintiffs were told to only report their scheduled time not their actual start and stop times.  When Plaintiffs asked about reporting their hours worked outside of scheduled or core hours, management deflected and said, "if you can't get your job done within your scheduled hours, you don't need to work here."

Management knew Plaintiffs worked long hours, but they did not care.

57.     During this meeting, Defendant informed the sales representatives they would no longer be compensated on a salary basis but would be transitioned to hourly and would maintain the same commission structure.

58.     Defendant further instructed the sales representatives they would be required to begin completing timesheets.  To complete timesheets, Defendant ordered sales representatives to only document their scheduled shifts on the timesheets and to automatically deduct lunch breaks, regardless of whether they actually took a full or partial lunch break.  For example, if a sales representative was scheduled to work from 8:30 a.m. until 5:30 p.m., the sales representative was only allowed to record the scheduled shift time, regardless of their actual hours worked.

59.     Understanding this new timekeeping policy would omit a significant number of hours worked from the timesheets, various sales representatives spoke up during the meeting and asked how to document the time worked outside the scheduled shifts, including pre-shift work, working through lunches, and post-shift work.

60.     Rather than address the ten (10) to fifteen (15) hours of inevitable overtime the sales representatives would be working but not documenting as a result of this policy, Defendant disregarded the questions, explaining "you will figure it out."

61.     Still, Defendant made clear only the scheduled shift times would be recorded and compensated.  Sales representatives were not permitted to correct their timesheets to reflect any time worked during the one-hour "lunch break."

62.     Defendant did not provide an explanation as to why sales representatives were being reclassified as hourly employees.

63.     Following this meeting, Plaintiff was assigned an hourly rate of $18.00 per hour,

consistent with Plaintiff's prior salary amount. In other words, despite Defendant transitioning Plaintiff from a salary to hourly, Plaintiff's duties remained the same and Plaintiff's income remained the same (apart from earned commissions).

64. As a result of Defendant's policy, Plaintiff and other sales representatives were only compensated for scheduled shift times and did not receive promised compensation for any of the work performed outside of the schedule shift times.

65. For example, Plaintiff typically worked at least fifty (50) to fifty-five (55) hours, though she was only compensated for forty (40) hours of work. In the aggregate, during her entire period of employment, Plaintiff was not paid a minimum of $297 per week for the work Plaintiff performed outside of her scheduled shift.

66. Defendant's failure to compensate for all hours worked has affected all Plaintiffs similarly.

**B. Unpaid Overtime—Commission**

67. Typically, Plaintiffs were scheduled for and worked at least a full forty (40) hours per week, not including work performed outside of scheduled shifts, as described above.

68. Plaintiffs were compensated at the regular hourly rate for scheduled shift times, but not for the undocumented required pre- and/or post-shift work described above.

69. For example, because most sales representatives work scheduled shifts of at least forty (40) hours per week, this additional time spent performing necessary, work-related activities was nearly always overtime work, compensable at one and one-half (1.5) times the regular rate.

70. Throughout the relevant period, Defendant has issued, as part of their compensation, monthly commissions to sales representatives, which are identified on wage statements as "commissions."

71. Defendant's monthly commissions were nondiscretionary and were based on

objective metrics pursuant to a formula used by Defendant.

72.     Despite such objective metrics and the fact that the commissions were calculated pursuant to a fixed formula, based on sales obtained, Defendant did not take into account such nondiscretionary commissions when calculating regular and overtime rates.

73.     Accordingly, the overtime rates paid by Defendant did not vary, regardless of the sum of sales representative' regular earnings, nondiscretionary commissions, and regardless of the extent to which the nondiscretionary commissions would have increased the regular hourly rate.

74.     Plaintiff typically received between $2,500.00 and $5,000.00 in monthly commissions and regularly worked hours in excess of fifty (50) per week, but only received compensation of her regular hourly rate ($18.00) for hours up to forty (40) each week, which did not compensate for any additional (overtime) hours worked or incorporate the amount of nondiscretionary commissions into earned overtime wages.

75.     By failing to include commissions in calculating the regular rate of pay Plaintiffs receive for overtime purposes, Defendant reduces the cost of overtime in violation of federal and state wage and hour laws.

76.     Defendant's failure to compensate at the appropriate rate for overtime work performed has affected Plaintiffs similarly.

77.     At all times material to this complaint, Defendant's uniform approach throughout its operations in securing, assigning, monitoring, and compensating Plaintiffs was intentionally done to evade their obligations under the FLSA and NCWHA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

78.     Plaintiff brings the First Cause of Action of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

79.     Members of the FLSA class are similarly situated.

80.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

81.     There are a minimum six hundred (600) similarly situated current and former Employees that fall within the scope of the aforementioned FLSA class.

82.     These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

83.     Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

84.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

85.     Named Plaintiff consents in writing to assert her claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Named Plaintiff's signed consent form is filed with the Court as Exhibit A this Complaint.  However, Named Plaintiff in this action was also an opt-in Plaintiff in the *Cirillo v. Citrix Sys., Inc.,* No:.3:20-cv-00540 (Sept. 29, 2020), Dkt. 2-1. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

86.     Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## RULE 23 NCWHA CLASS ACTION ALLEGATIONS

87.     Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees, for relief to redress and remedy Defendant's violations

of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

88. <u>Numerosity</u>: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class comprises at least 600 individuals.

89. <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked less than forty per week and in excess of forty (40) each week pursuant to § 95-25.6 and consistent with Defendant's handbook as required pursuant to § 95-25.13; and

    b. Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

    c. Whether pre-shift work, working "lunch breaks," and post-shift work performed by putative NC Class Members is compensable under the NCWHA; and

    d. Whether Defendant's failure to compensate putative NC Class Members for all hours worked is in violation of the NCWHA.

90. <u>Typicality</u>: The claims of Plaintiff are typical of the claims which could be alleged

by any member of the putative NC Class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant, as alleged herein, of failing to pay employees for all hours worked and for hours worked in less than and in excess of forty (40) each week at the appropriate hourly rate. Defendant's compensation policies and practices affected all putative NC class members similarly, and Defendant benefited from the same type of unfair and/or unlawful acts as to each putative NC class member. Plaintiff and members of the proposed NC class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

91.     <u>Adequacy of Representation</u>: Plaintiff is able to fairly and adequately protect the interests of all members of the proposed NC class, and there are no known conflicts of interest between Plaintiff and members of the proposed class. Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

92.     <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of

individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

93. <u>Public Policy Considerations</u>: Defendant violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

94. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 201, *et seq.***
**Brought by Plaintiff on Behalf of Herself and all Similarly Situated Employees**

95. Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

96. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

97. At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Plaintiff, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

98. At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

99. The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

100. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay for all hours worked to Plaintiffs, including for required, pre- and post-shift work performed by Plaintiffs.

101. At all relevant times, Defendant, pursuant to its policies and practices, failed to incorporate nondiscretionary commissions into Plaintiffs' hourly overtime rate, in violation of 29 C.F.R. §§ 778.208, 778.209(a).

102. As evidenced by Defendant's reclassifying Plaintiffs as hourly employees, rather than salaried, Defendant was aware of its responsibilities under the FLSA, but deliberately failed to comply.

103. During the relevant time period, Defendant actively evaded its obligation to maintain accurate time records of work performed by Plaintiffs, in order to escape its ultimate obligation to compensate Plaintiffs for all hours worked over 40 per week. Defendant was aware Plaintiffs regularly performed work in excess of forty (40) hours each week, but through concerted

19

efforts, Defendant prevented Plaintiffs from reporting and documenting the same.

104.    Defendant's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, despite the fact that Defendant knew Plaintiffs were performing work in excess of the time documented, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show they acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

105.    As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, post judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Violation of the North Carolina Wage and Hour Act
### N.C. Gen. Stat. § 95-25.1, *et seq.*
### Brought by Plaintiff on Behalf of Herself and all Similarly Situated Employees

106.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

107.    At all relevant times, Defendant has employed, and/or continue to employ, Plaintiffs within the meaning of the NCWHA.

108.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday. Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C.

Gen. Stat. § 95-25.13(1)-(2).

109.     Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statement of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

110.     Additionally, "[a]n employee's signature on an employer's written notice of the promised wages which bears the date on which the employee was provided with the notice shall be presumptive evidence of the employer's notification in accordance with G.S. 95-25.13(1)." Notification at Time of Hiring, 13 N.C.A.C. 12.0804 (2022).

111.     Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established*** ." *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

112.     Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant Citrix was required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent between the

FLSA and state wage and hour laws. Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does not preempt the NCWHA.

113. Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

114. Defendant Citrix intentionally refused to pay all wages due, including wages for all hours worked, as accurately recorded by Plaintiffs, and as set forth in the preceding paragraphs of this Complaint, to Plaintiffs and putative class members in violation of the NCWHA.

115. Defendant Citrix was aware that Plaintiffs and putative Plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40) and overtime wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

116. Defendant Citrix employed Named and putative Plaintiffs within the State of North Carolina.

117. At all relevant times, Defendant Citrix, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they log into their computer system through the moment they log out, including, for example, required pre and post-shift work performed by Plaintiffs, and at the appropriate promised overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek pursuant to the NCWHA.

118. Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

119.    As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

120.    Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant Citrix knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

121.    Due to Defendant Citrix's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1.    Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representatives of all those similarly situated under the FLSA collective action;

2.    At the earliest possible time, issue notice of this collective action, or allow Named Plaintiffs to do so, to all individuals who were, are, or will be employed by Defendant or performed work for Defendant in North Carolina at any time within the past three (3) years prior to September 2020, through the date of judgment or final disposition in this action, and who were subject to Defendant's timekeeping policy of only documenting scheduled shift time; subject to Defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks or

who worked forty (40) or more hours in at least one workweek in which undocumented work was performed, and/or who were paid commissions and worked overtime during any pay period for which a commission was received;

3. Issue an Order certifying this action as a Rule 23 class action under the NCWHA pursuant to the Federal Rules of Civil Procedure permitting the issuance of notice consistent with the following class definition:

> All individuals who were, are, or will be employed by Defendant or performed work for Defendant in North Carolina at any time within the past two (2) years preceding September 2020, through the date of judgment or final disposition in this action, and who were subject to Defendant's timekeeping policy of only documenting scheduled shift times; subject to Defendant's pre- and/or post shift work policy, including working through lunch breaks, and who did not receive compensation for all required pre and/or post shift work, including during lunch breaks and/or who were paid commissions and worked overtime during any pay period for which a commission was received.

4. Designate Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class and designate the below signed counsel as class counsel;

5. Award Plaintiffs actual damages for unpaid wages and liquidated damages equal in amount for the unpaid compensation found due to Plaintiffs and the class as provided by the FLSA, 29 U.S.C. § 216(b) and award Plaintiff and employees in the North Carolina class actual damages for unpaid wages and liquidated damages equal in amount as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (a1);

6. Award Plaintiffs attorneys' fees, costs, and interest pursuant to the FLSA, U.S.C. § 216(b) and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a), (d);

7. Award Named Plaintiff interest at the prevailing rate, as provided under 29 U.S.C. § 2617(a)(1)(A)(ii);

8. Award Named Plaintiff liquidated damages, as provided under 29 U.S.C. § 2617(a)(1)(A)(iii);

9. Award Named Plaintiff attorneys' fees and costs, as provided under 29 U.S.C. § 2617(a)(3); and

10. Award Named and Putative Plaintiffs further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 9th day of February, 2023.

*/s/ Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Matthew D. Wright (NCSB No. 58306)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mwright@gildahernandezlaw.com

*Attorneys for Plaintiffs*